**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NEW SKINNY MIXES, LLC d/b/a JORDAN'S SKINNY MIXES | Civil Action No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | Jury Trial Demanded |
| MOISHE HARTSTEIN a/k/a MORRIS HART and 9335-5147 QUEBEC, INC. d/b/a HEALTH FOOD INC., d/b/a SLIM SYRUPS, d/b/a CAPITAL NUTRITION, and CAPITAL NUTRITION, INC., | |
| Defendants. | |

Plaintiff New Skinny Mixes, LLC d/b/a Jordan's Skinny Mixes ("Skinny Mixes"), by and through its undersigned attorneys, for its Complaint against defendant Moishe Hartstein a/k/a Morris Hart ("Hart"), 9335-5147 Quebec, Inc. d/b/a Health Food Inc., d/b/a Slim Syrups, d/b/a Capital Nutrition ("Quebec, Inc."), and Capital Nutrition, Inc. avers as follows:

<u>**Nature of the Action**</u>

1.     Skinny Mixes commences this action against defendants Hart, Quebec, Inc., and Capital Nutrition, Inc. ("Defendants"):

(a)     for preliminary and permanent injunctive relief enjoining Defendants from continuing to unfairly compete with Plaintiff by, among other things: infringing upon Plaintiff's trade dress; falsely suggesting that Defendants' products are affiliated with Plaintiffs' products; and otherwise disseminating false information to the market regarding Plaintiff's products to the market;

(b)     for compensatory, consequential, statutory, and punitive damages, as well as interest and attorneys' fees and costs as authorized by law, for Defendants' violations of statutory and common law; and

(c)     for compensatory damages, as well as prejudgment interest as authorized by law, against Hart and Quebec, Inc. for breach of their contractual obligations to Skinny Mixes and by assignment, breach of their contractual obligations to Skinny Mixes' third-party intermediary.

## The Parties

2.      Plaintiff New Skinny Mixes, LLC is a Delaware limited liability company having its principal place of business located at 2849 Executive Drive, Suite 210, Clearwater, Florida. Pursuant to a Purchase and Sale on or about April 2, 2019, New Skinny Mixes, LLC is the successor in interest to all rights, title, and interest of Skinny Mixes, LLC, a Florida limited liability company, with respect to the Trademark License Agreement and all claims asserted herein.

3.      Upon information and belief, including Defendant Hart's own filings with the United States Patent and Trademark Office, Defendant Hart is an individual domiciled in the United States, residing at 5100 15th Avenue, Apartment 10, Brooklyn, New York 11219.

4.      Defendant Quebec, Inc. is a Canadian entity that does business as Health Food Inc., Slim Syrups, and Capital Nutrition, from its principal place of business located at 1-763 Avenue Querbes, Montreal QC H2V 3W8, Canada.

5.      Defendant Capital Nutrition, Inc. is a Canadian entity with a registered office address of 1-763 Avenue Querbes, Montreal QC H2V 3W8, Canada, but upon application to the United States Patent & Trademark Office ("USPTO") to register the mark "Slim Syrups," stated

that Capital Nutrition, Inc. is a corporation of Canada having an address of 5100 15th Avenue, Apartment 10, Brooklyn, New York 11219.

## Jurisdiction and Venue

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 15 U.S.C. §1121 because the district courts of the United States have original jurisdiction over any civil action arising under the laws of the United States, including here, Skinny Mixes claims under Section 43 of the Lanham Act, 15 U.S.C. § 1125.

7.     This Court has supplemental jurisdiction over Skinny Mixes' state-law claims pursuant to 28 U.S.C. § 1367(a) because such claims arise out of the same common nucleus of operative facts.

8.     This Court has personal jurisdiction over Defendants because the claims at issue arise out of, or relate to: (a) Hart and/or Quebec, Inc.'s, and/or Capital Nutrition, Inc.'s use of infringing trade dress, false designation of origin, and unfair competition occurring within this District; (b) Defendants' breaches of contractual obligations for goods sold to it from this District; and (c) Defendants' breaches of the Trademark License Agreement entered into between Quebec, Inc. and Skinny Mixes, in which the parties agreed to submit to the exclusive personal jurisdiction of this Court or the courts of the State of Illinois.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(3), because there is no other district in which this action may be brought, and Defendants are subject to the personal jurisdiction of this Court as described above.

**Facts**

10.     Skinny Mixes is the leading manufacturer of low-calorie cocktail mixes, sugar free coffee syrups, and other related specialty beverages and items.  Formed in 2009, Skinny Mixes sells its products in the United States and globally, including in Canada.

11.     Since its formation, Skinny Mixes has developed and used a number of valuable trademarks, which it licenses strategically to its distribution partners worldwide.  The trademarks include numerous registrations in both the United States and in Canada, including, *inter alia*, the word marks "Jordan's Skinny Mixes" (U.S. Reg. No. 3776159; CA Reg. No. 1958108), "Jordan's Skinny Syrups" (U.S. Reg. No. 5818648; CA Reg. No. 1958107), and "Jordan's Skinny" (U.S. Reg. No. 4967269).

12.     Each of Skinny Mixes' registered word and design trademarks (collectively, the "Registered Trademarks") are subsisting, valid and enforceable, and are valuable assets of Skinny Mixes.

13.     In connection with its efforts to expand its sales within Canada, in or about November 2018, Skinny Mixes entered into discussions with Moishe Hartstein a/k/a Morris Hart ("Hart"), who at all times relevant held himself out to Skinny Mixes as being an employee of Altra Food Distributors, Inc. ("Altra"), a well-known specialty food distributor based in Quebec, Canada.  Hart represented to Skinny Mixes that he was authorized to act, and was acting, on behalf of Altra during his discussions with Skinny Mixes.

14.     As is customary in a distributor relationship, Skinny Mixes entered into a License Agreement pursuant to which Skinny Mixes intended to grant Altra a license to use the Registered Trademarks in connection with Altra's distribution of Skinny Mixes' products in Canada.  Specifically, on or about April 1, 2019, Skinny Mixes entered into a Trademark License Agreement (the "License Agreement") with Health Food Inc. that memorialized the specific

terms, conditions, and limitations pursuant to which Health Food Inc. was authorized to use the Registered Trademarks. [1] Hart represented, and Skinny Mixes believed, that Health Food Inc. was an entity owned and/or controlled by Altra when Skinny Mixes entered into the License Agreement.

15.     Skinny Mixes later learned that Health Food Inc. was not and never was owned, controlled by, or affiliated with Altra.  Rather, upon information and belief, Health Food Inc. is a fictitious name used by Hart and the entities he owns and/or controls, Quebec, Inc. and Capital Nutrition, Inc.

16.     Upon information and belief, Quebec, Inc. and Capital Nutrition, Inc. also do business in Canada and the United States as Health Food Inc. and, more recently, as Slim Syrups.

17.     Hart never disclosed to Skinny Mixes that Health Food Inc. was not owned by or affiliated with Altra and, at all times relevant, Hart directly or indirectly led Skinny Mixes to believe that Skinny Mixes had engaged with Altra for purposes of licensing the Registered Trademarks and for distribution services in Canada, with such licensing and distribution to be carried out through Health Food Inc. and/or Capital Nutrition.

18.     Skinny Mixes is now aware, however, that neither Health Food Inc. nor Capital Nutrition were valid or existing entities and were simply names under which Hart and/or Quebec, Inc. did business.

19.     In any event, the authority of Health Food Inc. and/or Capital Nutrition to sell Skinny Mixes' products was confined to consumers and customers located within Canada only. Neither Health Food Inc. nor Capital Nutrition (i.e. Hart, Quebec, Inc. and/or Capital Nutrition,

---

[1] The License Agreement is subject to a Confidentiality provision.  Accordingly, a copy of the License Agreement is not attached hereto but will be filed under seal as Exhibit "A."  Upon information and belief, Defendants have a copy of the License Agreement in their possession.

Inc.) were ever authorized to offer for sale or sell Skinny Mixes' products in the United States or in any other jurisdiction outside of Canada.

20.     By virtue of acting as a distributor of Skinny Mixes' products in Canada for several years, Defendants became intimately familiar with Skinny Mixes' products, including but not limited to its product offerings, use of its Registered Trademarks, trade dress, and marketing strategies.

21.     Upon information and belief, Defendants also became familiar with Skinny Mixes' formulas and certain of its manufacturer relationships, along with Skinny Mixes' confidential information about pricing and sales margins.

22.     By mid-2022, Defendants' performance as a distributor of Skinny Mixes' products in Canada was poor and fell below Skinny Mixes' expectations.  In addition, Defendants fell behind in payments owed to an intermediary for shipments of Skinny Mixes products, which resulted in payments being withheld from Skinny Mixes.  As a result, in August 2022, Skinny Mixes met with Hart to terminate the business relationship, and simply indicated that Skinny Mixes decided to transition its Canadian business in a different direction.

23.     On or about August 4, 2022, Skinny Mixes sent written notice addressed to Capital Nutrition, attention Morris Hart, confirming termination of the relationship effective September 1, 2022.

24.     Pursuant to Section 6.1 of the License Agreement, the License Agreement also terminated no later than the end of February 2023 (the "Termination Date").  However, the rights granted under the License Agreement were limited to use in connection with the promotion and distribution of Skinny Mixes products, which Defendants no longer had the authority to do after September 1, 2022.

25.     In any event, Defendants d/b/a Health Food Inc., agreed that it "shall cease use of the Licensed Marks" after the Termination Date.  *See* License Agreement, at § 6.2.

26.     Notwithstanding the expiration of Defendants' rights to use any of the Registered Trademarks (no later than February 2023), Quebec, Inc. and Hart failed and refused to cease using and displaying the Registered Trademarks.  Instead, Defendants continued to use, and upon information and belief, are still continuing to use the Registered Trademarks in connection with their design of packaging for competing products, which they market under the name "Slim Syrups."

**Infringement of the Registered Trademarks on the "Skinnymixes.ca" Website and Litigation in Canada**

27.     In or around October 2018 (while Defendants were engaged with Skinny Mixes) Defendants registered and created a new website for Skinny Mixes, https://www.skinnymixes.ca (the "Skinny Mixes Canada Website"), to facilitate the sale and promotion of Skinny Mixes' products in Canada.

28.     Skinny Mixes authorized Hart to oversee the creation of the Skinny Mixes Canada Website, and Skinny Mixes intended the Skinny Mixes Canada Website to launch or "go live" at or around the same time as its new Skinny Mixes website in the United States (www.skinnymixes.com).

29.     In order to create and launch the Skinny Mixes Canada Website, Skinny Mixes worked with Hart (who Skinny Mixes still believed to be acting on behalf of Altra), to provide information and other webpage content (including certain of the Registered Trademarks) to be used on the Skinny Mixes Canada Website.

30.     Skinny Mixes' United States website launched in early 2019, and the Skinny Mixes Canada Website – which included much of the same information and content found on www.skinnymixes.com – launched shortly thereafter.

31.     In connection with final preparations for the launch of the Skinny Mixes Canada Website, Skinny Mixes provided Hart with information for 1,400 of Skinny Mixes' Canada-based contacts.

32.     The Skinny Mixes Canada Website was to be monitored by Health Food, Inc. so as to facilitate the taking and filling of orders for Skinny Mixes' products in Canada.

33.     As contemplated by Skinny Mixes, Health Food, Inc. monitored and was responsible for addressing orders for Skinny Mixes' products received through the Skinny Mixes Canada Website.  Accordingly, Skinny Mixes allowed Heath Food, Inc. to have control over the Skinny Mixes Canada Website consistent with Skinny Mixes' authorization of Health Food, Inc. (which Skinny Mixes believed was an Altra company) to sell and promote Skinny Mixes' products in Canada.

34.     Upon termination of the License Agreement, Skinny Mixes requested that Health Food, Inc. turn over control to the Skinny Mixes Canada Website to Skinny Mixes because Health Food, Inc. was no longer permitted to use the Registered Trademarks.  Defendants, d/b/a Health Food, Inc. refused to do so. [2]

---

[2] Defendants continue to refuse to cede control of the Skinny Mixes Canada Website to Skinny Mixes, and that refusal is the subject of an ongoing injunction action in Canada (the "Canadian Injunction Action").  *See* New Skinny Mixes c. 9335-5147 Quebec, Inc. et al., Superior Court Province of Quebec, District of Montreal, No: 500-17-125038-235.  By interim order in the Canadian Injunction Action, Quebec, Inc. was ordered to make the Skinny Mixes Canada Website temporarily unavailable. The interim order in the Canadian Injunction Action was based, among other things, upon a finding by the Canadian Court that Quebec, Inc.'s conduct was "profoundly unfair and disloyal" and "all the more unacceptable when carried out by a former distributor who has intimate understanding of Skinny [Mixes'] market.

35.     Instead, Defendants utilized the Skinny Mixes Canada Website and its associated email accounts to suggest to consumers and visitors to the site (not limited to individuals in Canada) that Skinny Mixes *was rebranding itself to become* **Slim Syrups**.

36.     More specifically, on or about May 4, 2023, Defendants published the below message on the Skinny Mixes Canada Website.



### Skinny Mixes Canada

We are excited to announce that Skinny Mixes Canada will be officially relaunching as Slim Syrups.

This change reflects our commitment to providing our customers with delicious, sugar-free, keto-friendly syrups that are fully compliant in Canada.

Our new name and product line will not change our commitment to providing our customers with high-quality products and excellent customer service. We remain dedicated to delivering the same level of quality and care that you have come to expect from us.

We would like to take this opportunity to thank you for your loyalty and support over the years. We hope that our new products will meet and exceed your expectations, and we look forward to serving you under our new brand name, Slim Syrups.

Should you have any questions or concerns, please do not hesitate to contact us. Our customer service team is always available to assist you.



**OUR FUTURE WILL BE**

37.     Defendants also sent a similar message via email blast to the customer distribution list for the Skinny Mixes Canada Website.



[...]



38.     These above actions were, upon information and belief, received and or viewed by persons located both within and outside of Canada, including customers and consumers located within the United States.

39.     Defendants' actions were deliberate and intentional, and plainly designed to suggest a common source, sponsorship, affiliation, or approval as between Skinny Mixes and Defendants' Slim Syrups products.

## Slim Syrups

40.     Although it was unknown to Skinny Mixes at the time, Skinny Mixes now understands and believes that while Skinny Mixes was engaged in good-faith discussions with Defendants to wind-down the parties' distribution relationship, Defendants were formulating and acting on a plan to unfairly compete with Skinny Mixes.

41.     Within a month after Skinny Mixes notified Defendants of its intent to terminate the License Agreement, Defendants registered the website https://slimsyrups.ca and thereafter created a functional webpage and related social media accounts for a company doing business as "Slim Syrups."

42.     Hart and/or Quebec, Inc. later created and launched a United States-based website at https://www.slimsyrups.com/us/ that offers Slim Syrups products for sale directly to consumers within the United States, including in this District.

43.     Defendants d/b/a Slim Syrups – having actual knowledge about the Registered Trademarks and Skinny Mixes' trade dress – created, adopted, used, and continue to use trade dress that incorporates and features designs that are confusingly similar to, and infringe on, Skinny Mixes' trade dress.

44.     The website design and product packaging created, adopted, and used by Slim Syrups were intentionally devised to create confusion between Skinny Mixes' products and those offered for sale by Slim Syrups.

45.     Slim Syrups' website design and product packaging were designed to, and do, create confusion among consumers and purchasers of Skinny Mixes' products, because the Slim Syrups products feature the same or substantially similar packaging, flavors, and other descriptive characteristics as shown (by way of example but not limitation) below.

 

 

46.     Likewise, Defendants' "Slim Syrups" website was specifically designed to further its deceptive messaging within the trade and to consumers.  The Slim Syrups website layout, color scheme, and design were intentionally created to be similar to that of the Skinny Mixes' website.



47.     Defendants also deliberately created the search engine landing page for Slim Syrups to appear strikingly similar to that for Skinny Mixes, as depicted below.



48. Additional deceptive and infringing actions by Defendants d/b/a Slim Syrups include, *inter alia*, holding out as its own certain "recipes" developed and first appearing on Skinny Mixes' website. In fact, Defendants both copied Skinny Mixes' recipes verbatim and ***displayed Skinny Mixes' own photograph featuring Skinny Mixes' "Glazed Donut" syrup*** on the Slim Syrups website.





SHOP     BEST SELLERS     NEW          ADD 12, GET 1 FREE     RECIPES     EXPLORE

# Skinny Donut Everyday Coffee

*This Skinny Donut Everyday Coffee tastes like happiness in a cup!*

PREP TIME
5

TOTAL TIME
*5 min*





**NUTRITION**

- Servings: 1
- 50 cal
- 5.3g carbs
- 4g sugar
- 1.6g fat

**INGREDIENTS**

- 1 cup of coffee
- 1/4 cup milk of choice
- 2 TBSP Sugar Free Glazed Donut Syrup

**DIRECTIONS**

- Pour all ingredients into a cup, stir & enjoy! It's that easy :)

49.     In furtherance of their knowingly deceptive scheme, Defendants d/b/a Slim Syrups communicated to Skinny Mixes' customers that Skinny Mixes was in the process of changing its name from "Skinny Syrups" to "Slim Syrups."  This false and misleading communication created and continues to create substantial and irreparable harm to the Skinny Mixes brand and to customer/consumer good will.

50.     Defendants' deceptive campaign has created and will continue to create confusion in the trade and among consumers about the source and origin of Slim Syrups' products and by suggesting an affiliation between Slim Syrups and Skinny Mixes where there is none.

### Confusion in the U.S. Market

51.     Defendants' intentionally confusing and deceptive practices have caused confusion in the United States as between Skinny Mixes and Slim Syrups.

52.     In addition to their direct-to-consumer sales through their slimsyrups.com/us website, Defendants have sold, and continue to sell, their infringing products in the wholesale market.  Upon information and belief, Defendants have deliberately misled wholesale customers to falsely believe that there is an affiliation between Skinny Mixes and Slim Syrups.

53.     By way of example, but not limitation, Skinny Mixes' and Slim Syrups' products are listed together for online sale to consumers through third-party wholesale customers of Defendants like "Vikings Nutrition" which offers both products for sale in the United States through its website https://vikingsnutrition.com/.

54.     On its website, Vikings Nutrition, features a "Skinny Syrups Mixes" page under the "Shop By Brands" banner, which prominently displays Skinny Mixes as the brand being sold on that page, but offers for sale both Skinny Mixes' and Slim Syrups' products for sale to consumers under that brand page.



55.     Defendants d/b/a Slim Syrups engaged in the foregoing unlawful and deceptive conduct with the knowledge and specific intention that it would affect and damage Skinny Mixes while advancing the financial and business interests of Defendants.

56.     As a direct and proximate result of the unlawful conduct and actions of Defendants, individual consumers and businesses that have transacted business with Defendants and/or purchased Slim Syrups' products have been confused and have come to believe that they were transacting business or buying products originating from Skinny Mixes and/or believed that Skinny Mixes approved, endorsed, or sponsored the products of Slim Syrups.

57.     Skinny Mixes did not authorize Defendants to use the Registered Marks beyond the Termination Date, nor did Skinny Mixes authorize Defendants to use any reproductions, counterfeits, copies, or colorable imitations of any of the Registered Trademarks, any part of Skinny Mixes' trade dress, or any other proprietary information.

58.     Skinny Mixes has been, and will continue to be, damaged by the unlawful conduct and actions of Defendants unless and until such conduct is enjoined by this Court.

59.     The nature of the harm and damages sustained, and that will continue to be sustained, by Skinny Mixes is of the type that cannot be fully or adequately compensated by money damages alone.

**The Color Brands Assignment**

60.     In addition to purchasing products directly from Skinny Mixes, Defendants (d/b/a Capital Nutrition, Inc.) also procured certain of Skinny Mixes' products from a third-party distributor, Color Brands, LLC ("Color Brands").  Color Brands is a food and beverage distribution company headquartered in Chicago, Illinois.

61.     Color Brands purchased inventory from Skinny Mixes and then sold certain of the inventory it purchased to Defendants d/b/a Capital Nutrition.

62.     With respect to three orders for inventory by Defendants, all of which were fulfilled by Color Brands, Defendants failed and refused to pay for the Skinny Mixes products it ordered and received from Color Brands (and presumably sold).

63.     In total, three orders for Skinny Mixes products sold and delivered by Color Brands to Defendants were unpaid, totaling $109,687.78, exclusive of interest.

64.     Color Brands, having not been paid by Defendants, failed to make timely payment to Skinny Mixes for the inventory it ordered and then sold to Defendants.

65.     In connection with Color Brands' resolution of its dispute over unpaid inventory with Skinny Mixes, Color Brands agreed to (and did) assign all of its right, title, and interest in, to, or under any accounts, contracts and claims it has or had against Defendants arising out of or relating to the invoices issued by Color Brands to Defendants that were not paid. A true and correct copy of the Assignment Agreement (the "Assignment") between Color Brands and Skinny Mixes is attached hereto as Exhibit "B."

66.     Under and pursuant to the Assignment, Skinny Mixes now stands in the shoes of Color Brands and has the right to pursue payment of the total principal sum of $109,687.78 from Defendants.

**COUNT I**
**Trade Dress Infringement – Violation of Section 43(a) of the Lanham Act,**
**15 U.S.C. § 1125**

67.     Skinny Mixes incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

68.     Skinny Mixes sells – direct to consumers and to wholesale distributors – a variety of low and zero sugar fruit syrups, coffee syrups, cocktail mixes, and sauces within the United States under the brand names "Jordan's Skinny Mixes," "Jordan's Skinny Syrups," and "Jordan's Skinny Sauces."



69.     Most of Skinny Mixes' products, i.e., those sold under its "Jordan's Skinny Mixes" and "Jordan's Skinny Syrups" brand names, feature several unique packaging characteristics, including the design and shape of the bottle, colorful descriptive labeling, and a protective wrap. All of Skinny Mixes' products feature its Registered Trademarks.

70.     Skinny Mixes has sold its various products under the "Jordan's Skinny Mixes" and "Jordan's Skinny Syrups" brand name in the United States since at least 2010.

71.     Slim Syrups, like Skinny Mixes, sells various fruit and coffee syrups as well as cocktail mixes both direct to consumers and through wholesale distributors within the United States.  Upon information and belief, Defendants first began selling their Slim Syrups products within the United States no earlier than 2023 – after their Trademark License Agreement with Skinny Mixes was terminated.

72.     Upon information and belief, Defendants first began selling Slim Syrups products in Canada in early 2023 and did not begin to sell Slim Syrups products in the United States until later in 2023 through wholesale channels only.

73.     Upon information and belief, Defendants first began selling Slim Syrups products direct to consumers in the United States through its www.slimsyrups.com website in late 2023.

74.     Defendants' d/b/a Slim Syrups online presence in both the United States (and in Canada) deliberately features a similar webpage layout to that first developed and utilized by Skinny Mixes for the sale of its products years before.





75.     As shown above, Defendants deliberately and intentionally copy the aesthetic aspects of color, bottle shape, labeling, placement of brand name, and overall design of Skinny Mixes' products to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' Slim Syrups products.

76.     Defendants also deliberately and intentionally copied the layout and many aspects of the functionality of Skinny Mixes' website to further confuse ordinary consumers about the source, sponsorship, affiliation, or approval of Defendants' Slim Syrups products.

77.     In furtherance of its deceptive scheme, many of Slim Syrups' products bear the same product name and confusingly similar packaging to those products first offered for sale by Skinny Mixes in the United States.



78.     The result of Defendants' intentional acts is that the ordinary consumer is likely to be confused about the source, sponsorship, and/or affiliation of Defendants' products as

compared to the same or similar products long offered for sale in the United States by Skinny Mixes.

79.     Defendants' deliberately deceptive tactics and flagrant copying of Skinny Mixes' trade dress has and will continue to deceive ordinary consumers who seek to purchase Skinny Mixes' products.

80.     Skinny Mixes has been harmed by Defendants' intentionally deceptive conduct by both direct diversion of sales and/or by a decrease in goodwill associated with its products when consumers unwittingly purchase Slim Syrups products.

81.     As described in the foregoing paragraphs, Defendants have violated and continue to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Skinny Mixes' trade dress associated with the design of Skinny Mixes' bottles, the color and other descriptive characteristics of its labeling, the placement of brand name, the color and placement of the protective/tamperproof sealing, and the overall aesthetics of Skinny Mixes' products.

82.     Skinny Mixes' trade dress is distinctive as to aesthetic aspects of the shape of the bottle, color and other descriptive features of the labeling, placement of the brand name, and placement of the protective/tamperproof sealing as Skinny Mixes' products are either inherently distinctive or have acquired distinctiveness through Skinny Mixes' continuous sales of its "Jordan's Skinny Mixes" and "Jordan's Skinny Syrups" products in the U.S. market for many years, including tens of millions of dollars in sales of such products to hundreds of thousands of households and consumers in the United States.

83.     Defendants have used and continue to use the aesthetic aspects of the shape of the bottle, color and other descriptive features of the labeling, placement of the brand name, and placement of the protective/tamperproof sealing featured by Skinny Mixes' products without the

consent of Skinny Mixes and in a manner that is likely to cause, and indeed has caused, confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' Slim Syrups products.

84. Defendants abused their positions of trust as a distributor of Skinny Mixes by utilizing their intimate knowledge of Skinny Mixes' products in order to formulate a competing product deliberately designed to confuse consumers.

85. As a competitor of Skinny Mixes coming to the market well after Skinny Mixes, Defendants were under an affirmative duty to select trade dresses for its products that *avoid* not increase the likelihood of consumer confusion as to the source of Defendants' Slim Syrups products.

86. Defendants' unauthorized misuse and misappropriation of Skinny Mixes' distinctive trade dress has harmed, and continues to harm, Skinny Mixes' goodwill.

87. Skinny Mixes has suffered and will continue to suffer monetary harm in the form of lost sales and irreparable harm in the form of loss of customer goodwill due to Defendants' trade dress infringement under Section 43(a) of the Lanham Act.

88. Skinny Mixes seeks recovery of Defendants' profits, any damages sustained by Skinny Mixes, and the costs of this action, as well as treble damages due to Quebec Inc.'s trade dress infringement under Section 43(a) of the Lanham Act.

89. Due to Defendants' egregious and intentional conduct in infringing Skinny Mixes' protectible trade dress, Skinny Mixes also seeks a determination that this is an exceptional case justifying an award of Skinny Mixes' attorneys' fees and costs.

90.     Skinny Mixes further seeks an injunction prohibiting Defendants' ongoing sales of infringing products in the United States – both directly to consumers and to wholesale distributors, under Section 43(a) of the Lanham Act.

**COUNT II**
**False Designation of Origin – Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125**

91.     Skinny Mixes incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

92.     As detailed above, Skinny Mixes authorized Hart (who Skinny Mixes believed to be an Altra employee) to oversee the creation of the Skinny Mixes' Canada website and authorized Defendants d/b/a Health Food, Inc. to use the Registered Trademarks in connection with the sale and promotion of Skinny Mixes' products in Canada.

93.     Upon termination of the License Agreement, Skinny Mixes requested that Defendants relinquish control of the Skinny Mixes Canada website because Defendants were no longer permitted to use the Registered Trademarks, and Defendants' role in overseeing the website did not divest Skinny Mixes of its rights.  Nevertheless, Defendants refused to relinquish control of the website or any of Skinny Mixes' data, emails, or other business information.

94.     Instead, Defendants utilized the Skinny Mixes Canada website and its associated email accounts to falsely suggest to Skinny Mixes' customers and visitors of the Skinny Mixes Canada website (not limited to individuals in Canada) that Skinny Mixes ***was rebranding itself to become* Slim Syrups**.

95.     These false and misleading statements were, upon information and belief, received and/or viewed by persons located both within and outside of Canada, including customers and consumers located within the United States.

96.     Defendants' actions were deliberate and intentional and plainly designed to suggest a common origin, sponsorship, affiliation, or approval as between Skinny Mixes and Defendants' Slim Syrups products.

97.     Moreover, Defendants deliberately and intentionally copied the layout and many aspects of the functionality of Skinny Mixes' website and the aesthetic aspects of the shape of the bottle, color, labeling, placement of the brand name, placement of the protective/tamperproof sealing, and overall design of Skinny Mixes' products in an effort to cement and reinforce their previous false and misleading representations that Skinny Mixes was rebranding itself to become Slim Syrups.

98.     In furtherance of their deceptive scheme, many of Slim Syrups' products bear the same product name and confusingly similar packaging to those products first offered for sale by Skinny Mixes in the United States.

99.     Defendants' false and misleading representations regarding the origin of their products lead ordinary consumers to be confused about the origin, sponsorship, affiliation, or approval of Defendants' Slim Syrups products.

100.    Defendants' deliberately deceptive tactics, false and misleading representations regarding the origin of their products, and flagrant copying of Skinny Mixes' website and trade dress has had, and will continue to have, a tendency to deceive ordinary consumers who seek to purchase Skinny Mixes' products.

101.    As described in the foregoing paragraphs, Defendants have and continue to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by making false and misleading representations regarding the origin of their products and by infringing Skinny Mixes' trade dress associated with the design of Skinny Mixes' bottles, the color and other descriptive

characteristics of its labeling, the placement of the brand name, the color and placement of the protective/tamperproof sealing, and the overall aesthetics of Skinny Mixes' products.

102.     Skinny Mixes' trade dress is distinctive as to the aesthetic aspects of the shape of the bottle, color and other descriptive features of the labeling, placement of the brand name, and placement of the protective/tamperproof sealing such that Skinny Mixes' trade dress is either inherently distinctive or acquired distinctiveness through Skinny Mixes' continuous sales of its "Jordan's Skinny Mixes" and "Jordan's Skinny Syrups" products in the U.S. market for many years, including tens of millions of dollars in sales of such products to hundreds of thousands of households and consumers in the United States.

103.     Defendants have used and continue to use the aesthetic aspects of the shape of the bottle, color and other descriptive features of the labeling, placement of the brand name, and placement of the protective/tamperproof sealing featured by Skinny Mixes' products without the consent of Skinny Mixes and in a manner that is likely to cause, and indeed has caused, confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' Slim Syrups products.

104.     Skinny Mixes has suffered and will continue to suffer monetary harm in the form of lost sales and irreparable harm in the form of loss of customer goodwill due to Defendants' false and misleading representations regarding the origin of their products under Section 43(a) of the Lanham Act.

105.     Skinny Mixes is entitled to recover Defendants' profits, any damages sustained by Skinny Mixes, the costs of this action, and treble damages due to Defendants' trade dress infringement under Section 43(a) of the Lanham Act.

106.    Due to Defendants' egregious and intentional conduct in infringing Skinny Mixes' protectible trade dress, Skinny Mixes seeks a determination that this is an exceptional case and an award of Skinny Mixes' attorneys' fees and costs.

107.    Skinny Mixes further seeks an injunction prohibiting Defendants from continued use of infringing trade dress, false communications, and other means of falsely designating Defendants' products – both directly to consumers and to wholesale distributors, as affiliated with or originating from Skinny Mixes, in violation of Section 43(a) of the Lanham Act.

**COUNT III**
**(Breach of Contract – Trademark License Agreement)**

108.    Skinny Mixes incorporates each of the foregoing paragraphs as though fully set forth at length herein.

109.    The License Agreement is a valid and binding contract between Skinny Mixes and Hart and/or Quebec, Inc., and/or Capital Nutrition, Inc.

110.    Under the License Agreement, Defendants d/b/a Health Food Inc., were permitted to use Skinny Mixes' trademarks only as set forth therein and only during the Term of the License Agreement. *See* License Agreement at § 2.1.

111.    The distributor relationship between Skinny Mixes and Defendants was terminated in September 2022.

112.    The License Agreement was terminated in accordance with its terms in late February 2023. Accordingly, Defendants' lawful ability to use Skinny Mixes' trademarks ceased as of September 2022, and in any event, as of February 2023.

113.    Even though Hart and/or Quebec, Inc.'s lawful right to use Skinny Mixes' trademarks ended no later than February 2023, Defendants continue to use and utilize Skinny

Mixes' trademarks in connection with its promotion, advertising, sale and distribution of its own, competing Slim Syrups products.

114. By way of example, but not limitation, Defendants' United States-focused website for Slim Syrups – www.slimsyrups.com – includes images of Skinny Mixes' products that bear Skinny Mixes' trademarks.

115. Through the above actions and others, Defendants have breached and continue to breach their obligations under the License Agreement, namely, to cease any and all use of Skinny Mixes' trademarks.

116. Defendants' breaches of their obligations under the License Agreement have caused Skinny Mixes monetary harm and damages, and also irreparable harm in the form of loss of client goodwill because Defendants' use of Skinny Mixes' trademarks on its Slim Syrups' website creates confusion in the marketplace and among consumers.

117. Skinny Mixes' monetary damages are presently unknown but are believed to exceed $75,000.00 exclusive of interest and costs.

## COUNT IV
### (Breach of Contract – Color Brands Contract)

118. Skinny Mixes incorporates each of the foregoing paragraphs as though fully set forth at length herein.

119. Defendants, d/b/a Capital Nutrition, placed orders with Color Brands for the purchase of various Skinny Mixes products.

120. Defendants d/b/a Capital Nutrition agreed to pay Color Brands for the Skinny Mixes products that it ordered and that it received at the rates charged by Color Brands.

121.    Color Brands filled orders made by Defendants for Skinny Mixes products and tendered invoices to facilitate payment for the products sold, shipped to, and accepted by Defendants.

122.    Despite receiving and accepting all Skinny Mixes products ordered from and sold by Color Brands, Defendants failed and refused to make payment to Color Brands for products received and accepted, as memorialized by Color Brands' invoice numbers 11348, 11369, and 11175.  Those invoices were for products sold to Defendants for the sum total of $109,687.78.

123.    In breach of Defendants' contractual obligations to Color Brands, Defendants d/b/a Capital Nutrition failed and refused to pay for products it ordered, received, and accepted in the total amount of $109,687.78.

124.    Under and pursuant to Color Brands' assignment to Skinny Mixes, Skinny Mixes is entitled by law to recover all amounts due and owing from Defendants d/b/a Capital Nutrition to Color Brands, plus interest.

## COUNT V
### (Violation of Illinois Deceptive Trade Practices Act)

125.    Skinny Mixes incorporates each of the foregoing paragraphs as though fully set forth at length herein.

126.    As detailed herein, Defendants utilized the Skinny Mixes Canada Website and its associated email accounts to falsely suggest to Skinny Mixes' customers and visitors of the Skinny Mixes Canada Website (not limited to individuals in Canada) that Skinny Mixes *was rebranding itself to become* **Slim Syrups**.

127.    Defendants' actions were willful, deliberate, and intentional and plainly designed to pass off Slim Syrups as Skinny Mixes, to suggest that Slim Syrups were sponsored or

approved by Skinny Mixes, and/or to cause confusion or misunderstanding as to a common source, sponsorship, or approval as between Skinny Mixes and Slim Syrups.

128.     Moreover, Defendants deliberately and intentionally copied the layout and many aspects of the functionality of Skinny Mixes' website and the aesthetic aspects of the shape of the bottle, color, labeling, placement of the brand name, placement of the protective/tamperproof sealing, and overall design of Skinny Mixes' products in an effort to cement and reinforce their previous false and misleading representations that Skinny Mixes was rebranding itself to become Slim Syrups.

129.     Defendants' deliberately deceptive tactics, false and misleading representations regarding the origin of their products, and flagrant copying of Skinny Mixes' website and trade dress by offering for sale confusingly similar products has had, and will continue to have, a tendency to deceive ordinary consumers who seek to purchase Skinny Mixes' products.

130.     As described in the foregoing paragraphs, Defendants have violated and continue to violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*, by making false and misleading representations regarding the origin of their products and infringing Skinny Mixes' trade dress associated with the design of Skinny Mixes' bottles, the color and other descriptive characteristics of its labeling, the placement of brand name, the color and placement of the protective/tamperproof sealing, and the overall aesthetics of Skinny Mixes' products.

131.     Defendants have used and continue to use the aesthetic aspects of the shape of the bottle, color and other descriptive features of the labeling, placement of the brand name, and placement of the protective/tamperproof sealing featured by Skinny Mixes' products without the consent of Skinny Mixes and in a manner that is likely to cause, and indeed has caused,

confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Quebec, Inc.'s Slim Syrups products.

132.    Skinny Mixes has suffered and will continue to suffer irreparable harm in the form of loss of customer goodwill due to Defendants' deliberately deceptive trade practices, false and misleading representations regarding the origin of their products, and flagrant copying of Skinny Mixes' website and trade dress by offering for sale confusingly similar products.

133.    Defendants' actions were not authorized by Skinny Mixes and have caused and will continue to cause Skinny Mixes harm to the goodwill it enjoys with its customers and consumers and to the strength of its trademarks and trade dress in the market.

134.    Due to Defendants' egregious and willful conduct, Skinny Mixes seeks an award of its attorneys' fees and costs under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/3.

135.    Skinny Mixes also seeks an injunction against Defendants prohibiting their ongoing sales of infringing products in the United States – both directly to consumers and to wholesale distributors, under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/3.

**COUNT VI**
**(Common Law Unfair Competition)**

136.    Skinny Mixes incorporates each of the foregoing paragraphs as though fully set forth at length herein.

137.    As detailed herein, Defendants utilized the Skinny Mixes Canada Website and its associated email accounts to falsely suggest to Skinny Mixes' customers and visitors of the Skinny Mixes Canada Website (not limited to individuals in Canada) that Skinny Mixes *was rebranding itself to become* Slim Syrups.

138.    Defendants' actions were deliberate and intentional and plainly designed to suggest a common origin, sponsorship, affiliation, or approval as between Skinny Mixes and Defendants' Slim Syrups products.

139.    Defendants deliberately and intentionally copied and copy the layout and many aspects of the functionality of Skinny Mixes' website and the aesthetic aspects of the shape of the bottle, color, labeling, placement of the brand name, placement of the protective/tamperproof sealing, and overall design of Skinny Mixes' products in an effort to cement and reinforce their previous false and misleading representations that Skinny Mixes was rebranding itself to become Slim Syrups.

140.    Defendants' deliberately deceptive tactics, false and misleading representations regarding the origin of their products, and flagrant copying of Skinny Mixes' website and trade dress by offering for sale confusingly similar products has had, and will continue to have, a tendency to deceive ordinary consumers who seek to purchase Skinny Mixes' products.

141.    As described in the foregoing paragraphs, Defendants unfairly competed with Skinny Mixes, a direct competitor, by making false and misleading representations regarding the origin of their products and infringing Skinny Mixes' trade dress associated with the design of Skinny Mixes' bottles, the color and other descriptive characteristics of its labeling, the placement of brand name, the color and placement of the protective/tamperproof sealing, and the overall aesthetics of Skinny Mixes' products.

142.    Defendants have used and continue to use the aesthetic aspects of the shape of the bottle, color and other descriptive features of the labeling, placement of the brand name, and placement of the protective/tamperproof sealing featured by Skinny Mixes' products without the consent of Skinny Mixes and in a manner that is likely to cause, and indeed has caused,

confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' Slim Syrups products.

143.    Skinny Mixes has suffered and will continue to suffer monetary harm in the form of lost sales and irreparable harm in the form of loss of customer goodwill due to Defendants' deliberately deceptive tactics, false and misleading representations regarding the origin of their products, and flagrant copying of Skinny Mixes' website and trade dress by offering for sale confusingly similar products.

144.    Defendants' actions were not authorized by Skinny Mixes and have caused and will continue to cause Skinny Mixes harm to the goodwill it enjoys with its customers and consumers and to the strength of its trademarks and trade dress in the market.

145.    Skinny Mixes is entitled to recover Defendants' profits and any damages sustained by Skinny Mixes.

146.    Skinny Mixes also seeks an injunction prohibiting Defendants' ongoing sales of infringing products in the United States – both directly to consumers and to wholesale distributors.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff New Skinny Mixes, LLC, requests the following relief:

i.    An Order permanently enjoining Defendants, as well as any affiliated persons and related entities, from engaging in any further acts of unfair competition or deceptive trade practices utilizing any trade dress that is confusingly similar to any of Skinny Mixes' trade dresses.

ii.      An Order causing all labels, packages, wrappers, templates, and products bearing the infringing Slim Syrups' trade dress to be seized and barred from sale or further distribution and ultimately destroyed.

iii.     An Order requiring Quebec, Inc. to make the domain www.slimsyrups.com unavailable until such time as the infringing conduct and confusingly similar elements are remedied in a manner determined to be adequate by further Order of this Court.

iv.     An Order requiring an accounting of all Defendants' profits from the sale of any Slim Syrups' products and awarding those profits to Skinny Mixes as damages sustained by Skinny Mixes as a result of Defendants' unlawful conduct described herein.

v.     An Order declaring this to be an exceptional case under the Lanham Act and awarding treble, statutory, and punitive damages against Defendants and in favor of Skinny Mixes, together with reasonable attorneys' fees, costs of suit, and pre-judgment interest, and all such further relief this Court determines to be equitable and just.

Dated:  June 17, 2024

By: _____

P. Steven Fardy, #6230900
Jonna McGinley Reilly, #6288407
SWANSON, MARTIN & BELL, LLP
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100
Fax: (312) 321-0990
sfardy@smbtrials.com
jreilly@smbtrials.com

Siobhan K. Cole (*pro hac vice* forthcoming)
WHITE AND WILLIAMS LLP
1650 Market Street | One Liberty Place, Suite 1800 |
Philadelphia, PA 19103-7395
Tel: (215) 864-6891
Fax: (215) 789-7532
coles@whiteandwilliams.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEW SKINNY MIXES, LLC d/b/a | ) | |
| JORDAN'S SKINNY MIXES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| MOISHE HARTSTEN a/k/a MORRIS | ) | |
| HART and 9335-5147 QUEBEC, INC. | ) | |
| d/b/a HEALTH FOOD INC., d/b/a SLIM | ) | |
| SYRUPS, d/b/a CAPITAL NUTRITION | ) | |
| and CAPITAL NUTRITION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT A TO PLAINTIFF'S COMPLAINT**

**(Filed Under Seal)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEW SKINNY MIXES, LLC d/b/a JORDAN'S SKINNY MIXES, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. |
| MOISHE HARTSTEN a/k/a MORRIS HART and 9335-5147 QUEBEC, INC. d/b/a HEALTH FOOD INC., d/b/a SLIM SYRUPS, d/b/a CAPITAL NUTRITION and CAPITAL NUTRITION, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**EXHIBIT B TO PLAINTIFF'S COMPLAINT**

## ASSIGNMENT AGREEMENT

This Assignment Agreement is made between and among Color Brands, LLC ("**Color Brands**") and New Skinny Mixes, LLC ("**Skinny Mixes**") (collectively, the "**Parties**") as of the date last executed by the parties below.

### Background

A.     WHEREAS, Color Brands entered into certain purchase orders (collectively, the "**Purchase Orders**") to engage Skinny Mixes to provide certain products, including syrups and other mixes as more fully set forth in the Purchase Orders (the "**Product**").

B.     WHEREAS, Skinny Mixes delivered the Product to Color Brands and subsequently provided Color Brands with invoices (the "**SM Invoices**") for the Product, which were to be paid within thirty (30) calendar days.

C.     WHEREAS, Color Brands did not pay the SM Invoices, in full, and at least $426,533.26 (the "**SM Invoice Amount**") remains unpaid and owing to Skinny Mixes for the Product.

D.     WHEREAS, Color Brands sold a portion of the Product to customers in Canada, including 9335-5147 Quebec, Inc. d/b/a Health Food, Inc. and/or d/b/a Capital Nutrition, Inc. ("**Capital Nutrition**"), and provided Capital Nutrition with invoices (the "**CB Invoices**") for the Product sold to Capital Nutrition.

E.     WHEREAS, Capital Nutrition did not pay the CB Invoices, in full, and at least $109,000.00 (the "**CB Invoice Amount**") remains unpaid and owing to Color Brands for the portion of the Product sold to Capital Nutrition.

F.     WHEREAS, in connection with Color Brands' settlement of a dispute between it and Skinny Mixes relating to the SM Invoice Amount, and in consideration thereof, Colors Bands desires to assign, transfer, and convey to Skinny Mixes any and all of its right, title and interest in, to, or under any accounts, contracts, claims or causes of action, that it has, had, or may have arising out of and relating to Capital Nutrition's failure to pay the CB Invoice Amount to Color Brands (the "**Assigned Claims**").

### Assignment

NOW, THEREFORE, in consideration of the promises, payments, and mutual covenants referenced herein and/or detailed in the separate Settlement Agreement between Color Brands and Skinny Mixes, other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Parties, intending to be legally bound, agree as follows:

31253524v.1

DocuSign Envelope ID: 95EED382-7E0E-483B-86B9-06D78CA6EA58

1.    <u>Assignment.</u>  Color Brands hereby assigns, transfers, and conveys unto Skinny Mixes and/or its representatives or assigns, all of its right, title, interest, and ownership of any nature whatsoever, in, to, or under the Assigned Claims.

2.    <u>Color Brands Representations and Warranties.</u>

a.  Color Brands represents, warrants and covenants that: (i) the Assigned Claims is valid, liquidated, undisputed and non-contingent claim in at least the CB Invoice Amount; (ii) no portion of the Assigned Claims has been sold, assigned or pledged to any third party in whole or in part; (iii) Color Brands owns and has and is hereby assigning to Skinny Mixes good and sole legal and beneficial title to the Assigned Claims free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever; (iv) Color Brands has not received any payments or other consideration that would reduce the Assigned Claims; (v) the basis for the Assigned Claims is amounts due and owing by Capital Nutrition arising from the sale of goods or merchandise or the rendering of services by Color Brands to Capital Nutrition in the ordinary course of Capital Nutrition's and Color Brand's respective business; (vi) true and complete copies of all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing or relating to the Assigned Claims will be, at Skinny Mixes' option, delivered to Skinny Mixes within five (5) business days of Skinny Mixes' request; (vii) Skinny Mixes does not assume and shall not be responsible for any obligations or liabilities of Color Brands related to or in connection with the Assigned Claims; (viii) neither Color Brands nor Skinny Mixes shall be subject to tax withholding on any payments received for the Assigned Claims; and (ix) Color Brands has not engaged (and shall not engage) in any act, conduct or omission, or had (and shall not have) any relationship with Capital Nutrition or any of its affiliates that will reduce or impair or otherwise adversely affect the Assigned Claims or Skinny Mixes' right to payment for the Assigned Claims;

b.  Color Brands acknowledges and agrees that: (i) Skinny Mixes currently may have, and later may come into possession of, information relating to Capital Nutrition that is not known to Color Brands and that such information may be material to Color Brand's decision to assign the Assigned Claims to Skinny Mixes (collectively, the "**Excluded Information**"); (ii) Color Brands has decided to assign the Assigned Claims notwithstanding the lack of knowledge of the Excluded Information; and (iii) Skinny Mixes shall have no liability to Color Brands, and Color Brands waives and releases any claims that it might have against Skinny Mixes with respect to the non-disclosure of the Excluded Information;

c.  Color Brands shall, at any time and from time to time after the Effective Date, upon the request of Skinny Mixes, execute, acknowledge and deliver all such further deeds, assignments, affidavits, declarations, transfers, conveyances, powers of attorney and assurances, and take all such further actions, as shall be

necessary or desirable to give effect to the assignment hereby consummated and to collect and reduce to possession of Skinny Mixes any and all of the interests and assets hereby transferred by Color Brands to Skinny Mixes;

d.  Color Brands agrees that any payments or notices received on account of the Assigned Claims are for the benefit of Skinny Mixes and that Color Brands shall: (i) accept the same as Skinny Mixes' agent; (ii) hold the same in trust on behalf of and for the sole benefit of Skinny Mixes; (iii) notify Skinny Mixes of Color Brands receipt of payments or notices; and (iv) promptly deliver any payments or notices to Skinny Mixes (free of any withholding, set-off, claim or deduction of any kind) within ten (10) days or receipt of such payment or notice; and

e.  Color Brands hereby irrevocably appoints Skinny Mixes with full authority and power of substitution as its true and lawful attorney and authorizes Skinny Mixes to: (i) act in Color Brands' name, place and stead; (ii) demand, compromise, recover, and transfer to Skinny Mixes all such sums of money and securities which now are, or may hereafter become due and payable for, or on account of the Assigned Claims, and (iii) do all things necessary to enforce or compromise the Assigned Claims and Color Brands' rights thereunder or related thereto pursuant to the Agreement. Color Brands agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Skinny Mixes and hereby waives any notice requirements related to exercise of such powers.

3.      Entire Agreement/Governing Law.    This Assignment Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof. The Parties agreed that this Assignment Agreement shall be governed, and interpreted in accordance with, the laws of the State of New York.

COLOR BRANDS, LLC

By: _____
    40F28CEE1CB94E7
Title: President
Dated: 10/4/2023

Acceptance of Assignment

NEW SKINNY MIXES, LLC

By: _____
Title: CEO
Dated: 10/5/23

-4-