IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NEW SKINNY MIXES, LLC d/b/a
JORDAN'S SKINNY MIXES,

    Plaintiff,

v.

MOISHE HARTSTEIN a/k/a MORRIS
HART; 9335-5147 QUEBEC, INC. d/b/a
HEALTH FOOD, INC., SLIM SYRUPS,
and CAPITAL NUTRITION; and
CAPITAL NUTRITION, INC.,

    Defendants.

Case No. 24 C 5019

Hon. LaShonda A. Hunt

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' amended motion to dismiss, to strike, and for abstention (Dkt. 17) is denied as to dismissal and abstention and granted as to striking the jury demand. Defendants' answer to the complaint is due by July 8, 2026, and a joint status report, including a discovery plan and update regarding the Canadian case is due by July 15, 2026.

### I.    BACKGROUND

#### A.    Parties

Plaintiff New Skinny Mixes, LLC d/b/a Jordan's Skinny Mixes ("New Skinny") is a Delaware limited liability company with a principal place of business in Florida. (Compl. ¶ 2, Dkt. 1). New Skinny's predecessor, Skinny Mixes, LLC ("Old Skinny"), originally formed in 2009. (*Id.*). Unless context requires otherwise, Old Skinny and New Skinny will generally be referred to collectively as "Skinny Mixes" to avoid confusion.

Skinny Mixes manufactures low-calorie cocktail mixes, sugar free coffee syrups, and other related specialty beverages and items. (*Id.* ¶ 10). Its products are sold globally, including in the

1

United States and Canada. (*Id.*) Skinny Mixes owns several trademarks registered in the United States and Canada, including the word marks "Jordan's Skinny Mixes", "Jordan's Skinny Syrups", and "Jordan's Skinny". (*Id.* ¶¶ 11-12).

Defendant Moishe Hartstein a/k/a Morris Hart ("Mr. Hartstein") is a Canadian citizen and resident. (Hartstein Decl. ¶ 2, Dkt. 15).[1] Defendant 9335-5147 Quebec, Inc. d/b/a Health Food, Inc., Slim Syrups, and Capital Nutrition ("Quebec, Inc.") is a Canadian corporation with a principal place of business in Montreal, Canada. (Compl. ¶ 4). Mr. Hartstein confirmed that there is no formal entity named "Health Food, Inc." and it is an assumed name through which Quebec, Inc. does business. (Hartstein Decl. ¶ 5). Defendant Capital Nutrition, Inc. is a Canadian corporation with a principal place of business in Montreal, Canada. (Compl. ¶ 5). Mr. Hartstein stated that he formed Capital Nutrition, Inc. in 2021 but has never conducted any business through the entity. (Hartstein Decl. ¶ 6).

### B.      Canadian Distributorship

In fall 2018, Skinny Mixes began discussions with Mr. Hartstein about expanding sales within Canada through a distributor relationship. (Compl. ¶¶ 13-14). According to Skinny Mixes, Mr. Hartstein held himself out as an employee of a well-known food distributor, Altra Food Distributors, Inc. ("Altra Food"), with authority to act on its behalf in connection with the discussions. (*Id.*) Mr. Hartstein concedes that he was an employee of Altra Food at the time but maintains that he did not hold himself out as acting on its behalf with respect to the parties' discussions. (Supp. Hartstein Decl. ¶¶ 30-33, Dkt. 33-1). Specifically, Mr. Hartstein states that Altra Food specializes in distributing Kosher products, so "the decision was made that" another

---

[1] Plaintiff alleges, on information and belief that Mr. Hartstein is a resident of New York based on his own public filings. (Compl. ¶ 3). However, Plaintiff's residency is immaterial to the Court's decision.

company "would be best suited to build the market for the Skinny Mixes brand in Canada[,]" and Old Skinny "never expressed any insistence that Altra Food[] be involved in the distribution of Skinny Mixes in Canada, and similarly expressed no issue or concern when [he] left Altra Food[] in 2021[.]" (*Id.* ¶¶ 31-32).

In any event, around October 2018, Skinny Mixes authorized Defendants to create a Canadian website (www.skinnymixes.ca) to facilitate the sale and promotion of Skinny Mixes' products in Canada around the same time as Skinny Mixes launched its American website (www.skinnymixes.com). (Compl. ¶¶ 27-29). In connection with the websites, Skinny Mixes provided Defendants with certain information and content, including trademarks and over 1,400 Canada-based contacts. (*Id.* ¶¶ 29, 31). The websites launched in early 2019, and the Canadian website was to be monitored and controlled by Health Food, Inc. (*Id.* ¶¶ 30, 32).

### C. Trademark Licensing Agreement

A few months later, on April 1, 2019, the parties formalized the arrangement by entering into a Trademark License Agreement (the "TLA" or "Agreement"). (*Id.* ¶ 14). The parties to the TLA were Old Skinny, as licensor, and Health Foods Inc., as licensee or distributor, with Mr. Hartstein signing as its VP. (TLA, Dkt. 5). According to Skinny Mixes, during discussions, Mr. Hartstein represented that Health Food Inc. was an entity owned or controlled by Altra Food, and the TLA would be carried out through Health Food Inc. and/or Capital Nutrition. (Compl. ¶¶ 14, 17) Later, however, Skinny Mixes learned that Health Food Inc. was never owned, controlled by, or affiliated with Altra Food. (*Id.* ¶ 15). Rather, as discussed above, Health Food Inc. is not a formal entity but instead an assumed name under which Quebec, Inc. does business. On April 2, 2019, the day after the parties signed the TLA, New Skinny became successor in interest to all rights, title, and interest of Old Skinny in the TLA pursuant to a purchase and sale. (*Id.* ¶ 2).

3

Pursuant to the TLA, Skinny Mixes granted Health Food Inc. a non-exclusive license to use its registered trademarks in connection with the sale of its products in Canada, subject to certain terms, conditions, and limitations. (*Id.* ¶ 14). Relevant here, the TLA contains the following provisions:

- Skinny Mixes "is the sole and exclusive owner of the Licensed Marks" and Health Food was granted "a non-exclusive right and license to use [them] in connection with the promotion, advertising, distribution, and sale of Licensed Products" in Canada. (TLA, Preamble). The TLA references an attached Schedule identifying the "Licensed Marks" but nothing was included with the filing submitted to the Court. (*Id.* § 1)

- "Products sold by [Health Food] bearing the Licensed Marks must be purchased directly from [Skinny Mixes]." (*Id.* § 3.1)

- The initial term of the TLA "shall be deemed to have commenced as of the Effective Date and continue until terminated by either party upon six (6) months' prior written notice to the other Party," and upon termination of the TLA, "[Health Foods] must cease all use of the Licensed Marks." (*Id.* § 6).

- Health Food is "prohibited from assigning or otherwise transferring its rights under [the TLA]." (*Id.* § 7).

- The TLA is "binding upon and inures to the benefit of the parties hereto and their respective permitted successors." (*Id.* § 9.6).

- The TLA "shall be governed by and construed in accordance with" Illinois law. Furthermore, "[a]ny legal suit, action, or proceeding arising out of or related to [it] shall be instituted exclusively in the federal courts of the United States or the courts of the State of Illinois, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding." (*Id.* § 9.9).

- "Each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any claim, suit, action, or proceeding arising out of or relating to [the TLA] or the transactions contemplated hereby." (*Id.* § 9.10).

4

### D.    Performance

Over the next few years, the parties performed under the TLA, and Defendants became familiar with Skinny Mixes' products, including offerings, trademarks, trade dress, marketing, formulas, manufacturing relationships, and confidential pricing and sales margins information. (Compl. ¶¶ 20-21). By mid-2022, however, Skinny Mixes determined that Defendants' performance fell below expectations and therefore decided to terminate the business relationship.[2] (*Id.* ¶ 22). Among other things, Capital Nutrition had fallen behind on payments to Color Brands, LLC, a Chicago-based distribution company that purchased inventory from Skinny Mixes and sold it to Capital Nutrition. (*Id.* ¶¶ 22, 60-62). In total, Capital Nutrition failed to pay $109,687.78, exclusive of interest.[3] (*Id.* ¶ 63). After Color Brands failed to pay Skinny Mixes for the same inventory it had sold to Capital Nutrition, Color Brands assigned the right to collect such amounts to Skinny Mixes. (*Id.* ¶¶ 63-66).

### E.    Termination

On August 30, 2022, Skinny Mixes emailed a letter dated August 24, 2022, addressed to the attention of Mr. Hartstein and Capital Nutrition, Inc., confirming termination of the TLA effective September 1, 2022. (*Id.* ¶ 23; Supp. Hartstein Decl., Ex. 2). The letter stated that the goal was "ensuring a smooth transition for all parties, [Skinny Mixes], Capital Nutrition, and our customers." (Supp. Hartstein Decl., Ex. 2). Thus, pursuant to section 6.1 of the Agreement, the Agreement terminated six months later, or by the end of February 2023; however, Defendants'

---

[2] According to Mr. Hart, Skinny Mixes caused Defendants' poor performance by entering into a distribution relationship with a competitor at prices that undercut its deal with Defendants. (Supp. Hartstein Decl. ¶ 21).

[3] Mr. Hartstein claims that, after termination of the TLA, "Skinny Mixes, LLC . . . refused to buy back our inventory of product. Payment was properly withheld to mitigate damages resulting directly from Skinny Mixes, LLC's breach of the License Agreement." (Supp. Hartstein Decl. ¶ 22). However, it is unclear whether the payments withheld are the same payments assigned by Color Brands to Skinny Mixes for collection.

5

rights were limited as of September 1, 2022. (*Id.* ¶ 24; TLA § 6.1). Upon notice of termination, Skinny Mixes requested that Health Food Inc. turn over control of the Canadian Skinny Mixes website, but Health Food Inc. refused. (*Id.* ¶ 34).

      **F.**       <u>**Slim Syrups**</u>

Instead, Skinny Mixes believes that Defendants began planning to and did launch a product line under the name "Slim Syrups" in a manner that unfairly competed with Skinny Mixes by using trademarks, trade dress, and other characteristics and strategies designed to deceive and create confusion among consumers. (*Id.* ¶¶ 40-50). To that end, within a month of receiving notice of intent to terminate the TLA, Defendants registered a website https://slimsyrups.ca and created a functional webpage and related social media accounts for a company doing business as "Slim Syrups." (*Id.* ¶ 40). In addition, on May 4, 2023, Defendants published the following message on the Canadian Skinny Mixes website:



Skinny Mixes Canada

> We are excited to announce that Skinny Mixes Canada will be officially relaunching as <u>Slim Syrups</u>.
>
> This change reflects our commitment to providing our customers with delicious, sugar-free, keto-friendly syrups that are fully compliant in Canada.
>
> Our new name and product line will not change our commitment to providing our customers with high-quality products and excellent customer service. We remain dedicated to delivering the same level of quality and care that you have come to expect from us.
>
> We would like to take this opportunity to thank you for your loyalty and support over the years. We hope that our new products will meet and exceed your expectations, and we look forward to serving you under our new brand name, Slim Syrups.

***

(*Id.* ¶¶ 35-36). A few days earlier, on May 1, 2023, Defendants sent a similar message via email to the customer distribution list for the Canadian Skinny Mixes website, directing customers to "CHECK OUT OUR NEW WEBSITE SLIMSYRUPS.CA[.]" (*Id.* ¶ 37). Later Defendants created and lunched a US-based website for Slim Syrups as well. (*Id.* ¶ 42). According to Skinny Mixes, Defendants' relaunching campaign and similarities in product labeling, websites, and various other characteristics were designed specifically to and did in fact confuse and deceive customers in Canada and the United States. (*Id.* ¶¶ 43-59).

### G. <u>Canadian Case</u>

Almost immediately, on May 5, 2023, Skinny Mixes filed an action in Canadian court seeking to enjoin Defendants from infringing Skinny Mixes' intellectual property and otherwise unfairly competing against it. (Hartstein Decl. ¶ 13; Defs.' Mem., Ex. 2, Dkt. 14-2). On May 11, 2023, the Canadian court entered a temporary/provisional injunction (comparable to a temporary restraining order) essentially prohibiting Defendants' sale of Slim Syrups through May 22, 2023, subject to modification after Defendants significantly modified the trade dress of the Slim Syrups products.[4] (Hartstein Decl. ¶ 14; Defs.' Mem., Ex. 3 ("Can. Temporary Injunction"), Dkt. 14-3).

---

[4] With respect to the parties to the TLA, the Canadian court found that "In 2019, a Trademark License Agreement ( "Agreement") was entered into by Skinny and the defendant 9335-5147 Québec Inc . doing business as Health Foods. In 2021, defendant Capital Nutrition Inc. was incorporated and appears to have joined or taken up Health Food's position as distributor. The Court will refer to defendants collectively as Health Foods. They are controlled by Defendant Moishe Hartstein, a. k. a. Morris Hart." Temporary Injunction ¶ 3.

After Defendants complied, Skinny Mixes' requests to extend the temporary injunction and for other related relief were denied. (Hartstein Decl. ¶¶ 16-17; Defs.' Mem., Ex. 4, Dkt. 14-4; Plt.'s Supp. Stmt., Ex. A ("Can. Interlocutory Injunction") ¶¶ 14-15, Dkt. 72-1). Subsequently, on March 28, 2025, the Canadian court issued an interlocutory injunction (comparable to a preliminary injunction) effective until final judgment or settlement, ordering Defendants to turnover control of www.skinnymixes.ca and email addresses with that domain, prohibiting Defendants from using Skinny Mixes intellectual property, passing off or representing Slim Syrups and being the same as or affiliated with Skinny Mixes, and making false misleading, and/or anti-competitive representations or statements with respect to Skinny Mixes, and granting other related relief. (Can. Interlocutory Injunction ¶ 82). However, the Interlocutory Injunction order denied Skinny Mixes' request to prohibit Defendants from using and selling and also to recall products sold under the name Slim Syrups because, although Skinny Mixes had "shown the existence of a serious issue to be tried, it [had] not met its more stringent burden to show a strong *prima facie* case." (*Id.* ¶¶ 57-62). As of December 2025, the parties were waiting for the Canadian action to be set for trial. (Defs.' Resp. to Plt.'s Supp. Stmt. at 2757, Dkt. 81).[5]

### H. Illinois Contacts

Thus, since the lifting of the Canadian court's temporary injunction on May 26, 2023, Defendants have been permitted to sell and have sold products under the Slim Syrups name in Canada and the United States pending resolution of the Canadian action. During this time, Defendants' sales in the United States have taken place through various wholesalers and retailers, including at least Faire Wholesale (online wholesaler), Vikings Nutrition (online retailer),

---

[5] Unless otherwise noted, page numbers in docket citations refer to the PageID in the CM/ECF header, not any other page numbers in the header or footer of the document.

Perfectly Posh Boutique (retailer in Marion, Illinois), Southern Ledge Pools and Patios (retailer in Taylorville, Illinois), Golden Goodies Resale (retailer in Cambria, Illinois), Willow Branch Boutique and Tanning (retailer in Winchester, Illinois), Poppies Flowers & Gifts (retailer in Metropolis, Illinois), Hawthorne Tree (retailer in Carlinville, Illinois), and Steel City Cheesecakes (retailer in Granite City, Illinois), and, more recently, directly through Defendants' website, www.slimsyrups.com. (Plt.'s Resp. to Defs.' Mot. to Dismiss at 242, Dkt. 30; Penny Decl. ¶¶ 5-25, Exs. 1-21, Dkts. 30-2; Plt.'s Supp. Stmt., Exs. G-L, Dkt. 74; Paris Decl. ¶¶ 5-6, Exs. A, B, Dkt. 72-13 ). Defendants concede that Quebec, Inc. has sold Slim Syrups products through Faire and to Vikings but contend those sales are minimal, contend they have no control over who or where Faire or Vikings sell their products, and deny marketing or selling any product directly to any customer in Illinois. (Supp. Hartstein Decl. ¶ 23-26). Invoices and shipping labels generated by Capital Nutrition Inc. and communications between customers and Defendants' customer service representatives show that Defendants have sold and shipped to and interacted with customers in Illinois. Specifically, the communications show Defendants have routinely referred customers to open a claim with Faire customer service regarding issues with orders but at the same time directly engaged with customers by, for example, arranging to add missing products or provide a free case of product to customers' next orders free of charge. (Plt.'s Supp. Stmt., Ex. G-L).

## I.     **Procedural History**

In June 2024 (after the Canadian court's temporary injunction had lapsed and while Defendants continued to sell Slim Syrups and control www.skinymixes.ca but before its interlocutory injunction had issued), Skinny Mixes filed this action in the United States District Court for the Northern District of Illinois. (Compl., Dkt.1). Based on the allegations summarized above, the complaint asserts claims for trade dress infringement in violation of section 43(a) of the

Lanham Act, 15 U.S.C. § 1125 (Count I), (*id.* ¶¶ 67-90); false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (Count II), (*id.* ¶¶ 91-107); breach of the TLA (Count III), (*id.* ¶¶ 108-117); breach of the Color Brands contract (Count IV), (*id.* ¶¶ 118-124); violation of the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), 815 ILCS 510/3 (Count V), (*id.* ¶¶ 125-135); and common law unfair competition (Count VI) (*id.* ¶¶ 136-146). Essentially, Skinny Mixes seeks to prohibit Defendants from selling products under the name Slim Syrups in United States and recover damages arising from such sales. (*Id.* at 34-35).

Defendants filed a motion to dismiss the action based on lack of personal jurisdiction under Rule 12(b)(2), to dismiss or stay the action under principles of international comity and the *Colorado River* abstention doctrine, and to strike the jury demand under Rule 12(f) and pursuant to the terms of the TLA.[6] (Defs.' Am. Mot. to Dismiss, Dkt. 17). After briefing that motion but while awaiting a ruling, Skinny Mixes filed motions for a preliminary injunction and expedited discovery. (Plt.'s Mots., Dks. 36, 37). Following briefing of those motions, the Court held a hearing in August 2025, and granted Skinny Mixes' request for limited jurisdictional discovery to determine if Defendants sold Slim Syrups products in Illinois. (Minute Entry, Dkt. 52). Subsequently, Skinny Mixes' motions for a preliminary injunction and expedited discovery were terminated without prejudice to renewal after resolution of the still-pending dismissal motion (Minute Entry, Dkt. 66). Upon completion of limited jurisdictional discovery, the parties submitted

---

[6] Defendants also challenged Plaintiff's standing to pursue claims in an Illinois court (Defs.' Mem. at 72-73). However, in their reply brief, Defendants voluntarily withdrew that argument without prejudice. (Defs.' Reply at 441 n.2).

With respect to the jury demand, in its response brief, Plaintiff did not address much less rebut Defendants' contention that it must be stricken based on the unequivocal language in the TLA. (Plt. Resp. at 233-263, Dkt. 30). Accordingly, Plaintiff has forfeited this point. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("a party generally forfeits an argument or issue not raised in response to a motion to dismiss"). The jury demand is therefore stricken.

supplemental statements, evidence, and responses regarding personal jurisdiction, and briefing on the matter closed. (Dkts. 71, 72, 74, 77, 79, 81). The only remaining disputes are Defendants' challenge to personal jurisdiction and request for abstention. The Court will address each issue in turn.

## II.      DISCUSSION

### A.      Personal Jurisdiction

Rule 12(b)(2) permits a party to assert lack of personal jurisdiction through a motion to dismiss. Fed. R. Civ. P. 12(b)(2). "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, as here, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (quoting *Purdue Rsch. Found.*, 338 F.3d at 782). "When affidavits regarding the issue of personal jurisdiction are submitted, the district court may weigh the affidavits." *Curry*, 949 F.3d at 393. In determining whether the plaintiff has met its burden, any well-pleaded facts alleged in the complaint are taken as true and any factual disputes in the affidavits are resolved in favor of the plaintiffs. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 589 (7th Cir. 2021); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). However, "the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Interlease Aviation Invs. II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.

11

Supp. 2d 898, 904 n.3 & 905 (N.D. Ill. 2003)). Ultimately, the burden of establishing personal jurisdiction falls on the plaintiff. *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014), *as corrected* (May 12, 2014).

Defendants argue that the Court lacks personal jurisdiction over them because the forum selection clause of the TLA is unenforceable: (a) due to the absence of any nexus between the parties and Illinois at the time of contract, which, they say, makes the clause akin to forum shopping; (b) by New Skinny, as it is not a party or permitted successor to the TLA; and (c) as to Defendants other than Quebec Inc. d/b/a Health Food Inc., which was the only signatory to the TLA. Alternatively, Defendants claim they have insufficient minimum contacts with Illinois to satisfy due process requirements. Skinny Mixes responds that the forum selection clause is binding on at least Quebec, Inc. and Mr. Hartstein as signers of the Agreement. And, in any event, Plaintiff maintains that all Defendants are subject to the Court's jurisdiction because they have sufficient minimum contacts with Illinois.

### 1. Forum Selection Clause

A forum selection clause is one of the ways that a party may stipulate in advance to personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'")*; Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction."). The Supreme Court and Seventh Circuit have historically given strong deference to international forum selection clauses. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("[W]e conclude that the forum clause should control absent a strong showing that it should

12

be set aside. *** The correct approach [is] to enforce the forum clause specifically unless [the defendant] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."); *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) ("international forum-selection clauses are prima facie valid, especially when freely negotiated between private parties.").

"[A] forum selection clause is presumptively valid and enforceable unless (1) '[its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement . . . would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.'" *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001)[7] (quoting *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (internal citations and quotation omitted)). If a forum selection clause is valid and enforceable, then, in evaluating the applicability the provision, courts consider the scope of the clause based on its language and the nature of the claims brought by the plaintiff. *See IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 641 (7th Cir. 2022) (describing language of forum-selection clause covering claims "arising out of or related to this Agreement" as quite broad and then considering whether each claim falls within its scope).

Here, the forum selection clause in the TLA states:

> Any legal suit, action, or proceeding *arising out of or related to* this Agreement shall be instituted exclusively in the federal courts of the United States or the courts of the State of Illinois, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

---

[7] Although the holding of *AAR* focused on the effect of a forum selection clause on a forum non conveniens analysis, the Court of Appeal's recitation of the reasons a forum selection clause might be rendered invalid and unenforceable are nonetheless relevant.

13

(TLA § 9.9) (emphasis added). Putting to the side Plaintiff's breach of contract stemming from the assignment from third-party Color Brands, all the other claims in the complaint arise from use or misuse of Skinny Mixes' trademarks licensed under the TLA. Neither side seems to dispute that contention. Instead, they argue about the threshold issues of forum shopping and who is actually bound by this provision.

First, the Court finds no reason to deem the forum selection clause unenforceable. Although it does not appear that any of the parties had any meaningful connection to Illinois at the time of contracting, there is also no evidence that suggests forum shopping or the reasons listed in in *AAR*.[8] Defendants claim that they were rushed to sign the TLA, but these are sophisticated businesses that engaged in an arms-length transaction after months of discussions and already doing business together. Furthermore, the parties operated under the TLA for over three years, and Defendants do not claim that the entire agreement is unenforceable as a result of undue influence, so it is unclear why the forum selection clause specifically would be any different.

Second, the Court rejects Defendants' contention that New Skinny cannot assert rights under the TLA because Old Skinny signed the agreement and New Skinny is not a permitted successor, as Defendants claim they never consented to any assignment or knew of New Skinny until the Canadian case was filed. A plain reading of the contract dispenses with this argument. Section 9.6 of the TLA provides that, "[t]his Agreement is binding upon and inures to the benefit of the parties hereto and their respective permitted successors." (TLA § 9.6). Defendants read that

---

[8] In connection with their abstention argument, Defendants suggests that "[w]hat *really* prompted the multiple filings was a superseding adverse ruling on the merits in the Canadian Court[,]" and Skinny Mixes "now fears an adverse trial ruling, so it shopped for a new forum in the hopes of getting a different result[.]" (Reply at 452). However, the only substantive rulings from the Canadian action provided to this Court for review were entered in May 2023 and March 2025, all of which were temporary or interlocutory in nature and did not rule on the merits of the Canadian case, and this case was filed in June 2024. Thus, to the extent that this suggestion could be read to argue forum shopping after an adverse ruling, the information currently available to the Court does not support that contention.

provision to require their permission for Old Skinny to assign its rights under the TLA. However, the TLA also specifically includes a provision prohibiting assignment by Health Food Inc.: "Assignment by Licensee Prohibited. Licensee is prohibited from assigned or otherwise transferring rights under this agreement." (TLA § 7). Notably, that provision is one-sided and there is no comparable provision restricting Old Skinny's ability to assign its rights under the TLA. "In general, unless the parties have agreed otherwise, contract rights are freely assignable unless assignment would materially change the duties of the obligor, increase the obligor's risk, or impair the obligor's chance of obtaining return performance." *United States v. Doe*, 940 F.2d 199, 204 (7th Cir. 1991). Defendants have neither cited any contract language that prohibited Old Skinny from assigning its rights under the TLA nor argued that assignment to New Skinny materially affected it in any relevant way. Thus, New Skinny is entitled to assert rights under the TLA.

Next, the Court turns to the argument that if any Defendant is bound by the forum selection clause, it is Quebec Inc. only, since the party that signed the agreement, Health Food Inc., is an assumed name of Quebec Inc. As to Mr. Hartstein, Defendants cite case law supporting the general proposition that an individual who signs an agreement in his official capacity on behalf of an entity is not personally bound by the agreement. With respect to Capital Nutrition Inc., Defendants claim that it is not bound because it is not referenced in the TLA and did not exist when the agreement was executed. While Skinny Mixes obviously agrees that Quebec Inc. is bound by the forum selection clause, it also maintains that Mr. Hartstein is bound because he signed the agreement on behalf of a fictious entity and Capital Nutrition, Inc. is bound because a non-party may be bound by a forum selection clause where it is so closely related to a dispute that it becomes foreseeable that it will become bound.

15

At this stage in the proceeding, the Court is satisfied that Skinny Mixes has sufficiently alleged facts supporting enforcement of the forum selection clause against all Defendants. First, because it is undisputed that Quebec Inc. is bound under the TLA, the Court has no reason to find otherwise. Indeed, if Health Food Inc. was in fact an assumed name of Quebec Inc., then Quebec Inc. is bound under the Agreement.[9] *See Brennan Steel, Inc. v. Ecofab, Inc.*, No. 96 C 5783, 1997 WL 685000, at *4 (N.D. Ill. Oct. 27, 1997) (N.D. Ill. Oct. 27, 1997) (holding forum selection clause signed by fictitious company doing business on behalf of corporation was enforceable against and therefore supported personal jurisdiction over corporation). Skinny Mixes' theory of the case, however, is that all Defendants—not only Quebec Inc.—are bound by the TLA.

As to the other Defendants, according to Skinny Mixes, at the time the TLA was executed, it believed that Health Food Inc. was an entity affiliated with Altra Food and that the licensee/distributor obligations under the Agreement would be performed by Health Food Inc. and/or Capital Nutrition. Thus, it appears that Skinny Mixes was unaware Health Food Inc. and Capital Nutrition were assumed names of Quebec Inc. at the time. Skinny Mixes also could not have known that Capital Nutrition Inc. would later be formally organized as a legal entity but, according to Mr. Hartstein, have no actual business and instead be used as another assumed name of Quebec Inc. Furthermore, if Mr. Hartstein signed the Agreement on behalf of Health Food Inc., and Health Food Inc. was *not* a d/b/a of Quebec Inc. at the time or for purposes of the transaction, and instead a nonexistent corporation, then Mr. Hartstein is bound by the Agreement. *See Medrad, Inc. v. Sprite Dev.*, LLC, No. 08 C 5088, 2010 WL 3700826, at *4 (N.D. Ill. Sept. 8, 2010) ("the

---

[9] The Canadian court found that Skinny Mixes and Quebec, Inc. entered into the TLA. (Can. Interlocutory Injunction Order ¶ 5). Similar to this Court, however, the Canadian court also recognized that other Defendants played a role in the relationship. (Can. Temporary Injunction Order ¶ 3; *supra* n.5).

general rule is that individuals signing a contract on behalf of a nonexistent corporation (or a limited liability company) will be individually liable on that contract.").

At bottom, the current record shows that Mr. Hartstein's use of various entities and assumed names, some of which are overlapping, caused or at least contributed to Skinny Mixes' inability to specifically identify who it actually contracted with. Mr. Hartstein has offered his own account of which Defendant did business under the TLA and therefore might be subject to liability, but neither Skinny Mixes nor the Court is required accept Mr. Hartstein's version of events. In fact, because the Court must draw all inferences in Skinny Mixes favor and evidence has been provided to refute Mr. Hartstein's claims on this topic, the Court is compelled to conclude that his declaration is insufficient in this regard. At this juncture, it is enough that Skinny Mixes has alleged its understanding at the time of contract, the various Defendants' involvement in the discussion, signing, performance, termination, and aftermath of the TLA, and also provided evidence of conduct that gives rise to issues of fact regarding which Defendant or Defendants might be bound by the Agreement. For example, the notion that only Quebec Inc. was a party to the parties' agreement is undermined by the termination letter specifically addressed to Capital Nutrition from Skinny Mixes and references the relationship between "JSM, Capital Nutrition and our customers." (Supp. Hartstein Decl., Ex. 2). In other words, it is clear that at least Capital Nutrition was also considered to be bound by the Agreement, *see Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (non-party may be bound by forum selection clause if party is so "closely related" to the dispute that it becomes "foreseeable" that it will be bound), but it remains uncertain if, in this regard, Capital Nutrition was considered by the parties to be merely another assumed name of Quebec Inc. or its own separate entity. Discovery will yield more information regarding Defendants' organizational structure and conduct, and further argument regarding which claims

may proceed against which Defendants may be presented at summary judgment on a more developed record. For these reasons, the Court concludes that Skinny Mixes has met its burden to make out a *prima facie* case of personal jurisdiction over all Defendants under the forum selection clause of the TLA.

### 2.      Minimum Contacts

Personal jurisdiction can also be established through general or specific jurisdiction. *Tamburo*, 601 F.3d at 701. Because no party is "at home" in Illinois, specific jurisdiction is applicable here. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). There are three essential elements that must be shown to exercise specific jurisdiction over an out-of-state defendant: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 819 (7th Cir. 2021) (citing *Curry*, 949 F.3d at 398).

Here, only the first element is in dispute. The requirement that a defendant purposefully direct activities toward or avail itself of the privilege of conducting business in a forum State "ensures that [it] will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person[.]'" *Burger King*, 471 U.S. at 475 (quoting *Keeton*, 465 U.S. at 781; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

18

408, 417 (1984)). In Internet-based cases, the Seventh Circuit has "warned that '[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Advanced Tactical*, 751 F.3d at 803 (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011)). Generally, it is sufficient for a plaintiff to allege that the defendant actually sold an allegedly infringing product to a customer in Illinois. *See Liu v. Monthly*, 170 F.4th 1090, 1094 (7th Cir. 2026) (citing *Curry*, 949 F.3d at 400). Skinny Mixes easily meets this standard.

Unrefuted evidence in the form of sales records, invoices, shipping labels, and direct communications with customers regarding the sale of Slim Syrups products to customers in Illinois show that Defendants have purposefully directed their activities at Illinois and availed themselves of the privilege of conducting business here. Faire sales records list recurring sales of Slim Syrups to a handful of regular retail customers in Illinois. Invoices issued in connection with those sales are from Capital Nutrition Inc. or Slim Syrups at a Canadian address and to the various customers at their Illinois addresses. Same for the shipping labels. Finally, and perhaps the strongest evidence of purposeful availment, are the direct communications between Illinois customers and Defendants' customer service representatives. In those communications, customers are clearly identified as being located in Illinois. And, although the representatives generally first direct customers to contact Faire about filing a claim, they go on to discuss adding a missing product and even an entire case to the next shipment free of charge. These communications demonstrate that Defendants were completely aware of and wanted to maintain ongoing sales relationships with retail customers in Illinois.

Again, although the evidence in this regard identifies Capital Nutrition Inc. and Slim Syrups as the businesses involved, the allegations and current record are sufficient to support the conclusion that Slim Syrups and Capital Nutrition Inc. are assumed names of either Mr. Hartstein or Quebec Inc. or both.[10] Thus, those contacts are sufficient to support the exercise of personal jurisdiction over all Defendants.[11]

## B.   Abstention

Without conceding personal jurisdiction, Defendants also argue that the Court should abstain from hearing this case based on principles of international comity and the *Colorado River* doctrine. With respect to international comity, Defendants essentially contend that the Court should defer to the Canadian court to resolve the parties' dispute because the claims are more or less the same and Skinny Mixes' attempt to litigate in this Court after unfavorable rulings in the Canadian court should not be allowed. As to the *Colorado River* doctrine, Defendants insist that

---

[10] It is also plausible that the contacts of Capital Nutrition Inc. are in fact the contacts of the entity Capital Nutrition Inc., despite Mr. Hartstein's contention that the entity has not conducted any business.

Although Skinny Mixes did not expressly invoke a theory of liability based on veil piercing and/or alter ego, the allegations of the complaint sound in that regard. *See Stinton v. Nastas*, No. 24 C 7893, 2025 WL 3470568, at *6 (N.D. Ill. Dec. 3, 2025) (discussing pleading requirements for alter ego theory of liability). Because a plaintiff is required to plead "factual allegations, not legal theories," *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 550 (7th Cir. 2022) (quoting *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014)), the Court will overlook this omission and leave open the possibility that such theories of liability may apply to this case because, at this stage in the proceedings, drawing all reasonable inferences in Skinny Mixes' favor, the allegations regarding the blasé nature with which Mr. Hartstein operated through various entities and assumed names without informing Skinny Mixes are sufficient to support it, *see Stinton*, 2025 WL 3470568, at *6 (finding that allegations regarding the plaintiff's control over entity, failure to observe corporate formalities of various corporate entities, and other considerations were sufficient to plead that there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." (quoting *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 912 (N.D. Ill. 2007) & *Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1311 (7th Cir. 1993)).

[11] The parties do not specifically address whether the forum selection clause and minimum contacts support the exercise of personal jurisdiction over Defendants with respect to the Color Brands breach of contract claim. However, the Court notes that such claims fall within the scope of the forum selection clause because they "relate to" the TLA in that Defendants purchased the products from Color Brands under authority of the TLA and at Skinny Mixes' direction. Furthermore, because Color Brands is based in Illinois, it would have been reasonable for Defendants to expect to be haled into court in Illinois for failure to pay for any orders.

this Court should decline to exercise jurisdiction because this action and the Canadian case are parallel proceedings and consideration of the relevant factors shows that this is an exceptional case in which abstention is warranted. Skinny Mixes responds to both the international comity and *Colorado River* arguments by maintaining that, although the two cases stem from the same conduct, they involve different claims, evidence, and bases for liability and the relevant factors weight heavily in favor of exercising jurisdiction.

In the Canadian case, Skinny Mixes has asserted claims for violation of Canada's Trademarks Act, Canada's Copyright Act, and unfair competition under the Civil Code of Quebec. (Resp. at 527). The allegations in the Canadian action focus on Defendants' conduct in Canada and the confusing effects of their conduct in the Canadian market and the relief sought there shares the same focus. Although the Canadian court initially temporarily enjoined Defendants from selling products under the Slim Syrups altogether (including in the United States), it quickly lifted that provisional relief after Defendants modified the trade dress and later essentially confirmed that Slim Syrups may not use Skinny Mixes' intellectual property but may continue to operate under the new trade dress pending final determination at trial. As of December 2025, the parties were awaiting a trial date, and no update has been provided.

In this case, Skinny Mixes asserts claims for trade dress infringement and false designation of origin under the Lanham Act, breach of the TLA and the Color Brands contract, violation of the IUDTPA, and unfair competition under Illinois common law. (Compl. ¶¶ 67-146). In the same way the Canadian action is aimed at Defendants' conduct and consumer confusion in Canada, the allegations and relief sought in this case focus on Defendants' conduct directed toward and effects felt in the United States. Due to significant early motion practice and extended jurisdictional

21

discovery, this action remains at the pleading stage, with full fact and expert discovery, dispositive motion practice, and any trial yet to be scheduled.

Considering the claims, available relief, and history of the two cases, the Court concludes that it need not abstain from exercising jurisdiction under either principles of international comity or the *Colorado River* doctrine. At bottom, the parties agreed to litigate here and the lawsuits are not parallel for abstention purposes because Lanham Act claims are exclusively adjudicated in federal courts of the United States and the Canadian action thus cannot dispose of all claims in this case. Moreover, while principles of international comity may apply to the state-law claims, those arguments are not ripe for adjudication until there is a final judgment on the merits of those claims.[12]

### 1. **International Comity**

While "neither a matter of absolute obligation . . . nor of mere courtesy and good will," international comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). In other words, international comity, also known as "comity of the courts", applies when "judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere[.]" *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993) (Scalia, J.) (dissenting).

Relevant here, concerns of international comity generally subside where the parties have previously agreed to resolve legal disputes in a particular forum. *Fellowes, Inc. v. Changzhou*

---

[12] Similarly, to the extent that preclusion doctrines may prohibit the relitigation of claims or issues that were or could have been ligated in the Canadian case in this case, the parties may raise those arguments at an appropriate stage in the proceedings.

*Xinrui Fellowes Off. Equip. Co. Ltd.*, No. 11 C 6289, 2012 WL 3544841, at *6-7 (N.D. Ill. Aug. 16, 2012) (observing that "the important public policy of protecting forum selection clauses prevails over any concerns regarding international comity."), *vacated on other grounds*, 759 F.3d 787 (7th Cir. 2014) (citing *M/S Bremen*, 407 U.S. at 15 ("[I]n the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside."); *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006) (stating that "where private parties have previously agreed to litigate their disputes in a certain forum, one party's filing first in a different forum would not implicate comity at all.")); *see also Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 130 (S.D.N.Y. 1997) (rejecting motion to stay because parties agreed to a forum selection clause naming the domestic court as the proper forum and the enforcement of forum selection clauses is an "important public policy"), *aff'd sub nom., Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998).

Because the Court has already determined that the forum selection clause of the TLA is valid and enforceable by Skinny Mixes against all Defendants for purposes of exercising personal jurisdiction, concerns of international comity do not provide a basis to abstain from exercising jurisdiction. True, Skinny Mixes is the party that first filed suit in Canada. But Defendants do not appear to have invoked the forum selection clause as a defense in that action. And, in light of the differences between the timing, allegations, claims, evidence, and relief sought in the two actions, Skinny Mixes appears to be well-within its rights to have sought appropriate concurrent relief in both jurisdictions. *See Zimnicki v. Neo-Neon Int'l, Ltd.*, No. 06 C 4879, 2009 WL 2392065, at *3 (N.D. Ill. July 30, 2009) (holding that outcome of domestic litigation would not be dispositive of foreign lawsuit where domestic suit involved copyright and trademark infringement claims based

23

on copyrights and trademarks held in the United States, and foreign suit involved declaratory judgment action based on foreign intellectual property rights); *Rauland Borg Corp. v. TCS Mgmt. Grp., Inc.*, No. 93 C 6096, 1995 WL 31569, at *3 (N.D. Ill. Jan. 26, 1995) (concluding that, "even given the substantial similarity between the parties and the issues in each action, . . . preventing [the plaintiff] from pursuing its action in Canada would not be appropriate [because] resolution of the present action would not be dispositive of resolution of the Canadian action[.]"); *Black & Decker Corp. v. Sanyei Am. Corp.*, 650 F. Supp. 406, 409 (N.D. Ill. 1986) ("Intellectual property issues . . . involve separate and independent rights arising from the unique laws of each nation.").

Indeed, regardless of the existence of the forum selection clause, a plaintiff is free to pursue rights conferred upon them by different jurisdictions in those respective jurisdictions. *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 843 (N.D. Ill. 2000) ("Plaintiffs are free to litigate in other countries to protect legal rights conferred upon them by the governments of other countries, they also have a right to litigate in the United States to protect the legal rights conferred upon them by the Lanham Act and Illinois statute."). In such circumstances, "parallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as *res judicata* in the other." *Id.* at 845 (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926-927 (D.C. Cir. 1984)).

In sum, even if the forum selection clause did not prevail over any interests of international comity, the different claims, evidence, and relief involved in the two cases do not support abstention.

## 2.    *Colorado River* Doctrine

Under the *Colorado River* doctrine, a federal court may abstain from hearing a suit in "exceptional circumstances" and "await the outcome of parallel proceedings as a matter of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'" *Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, because the federal courts have a "heavy" and "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress, "only the clearest of justifications will warrant dismissal" of the federal action in deference to another proceeding. *Colorado River*, 424 U.S. at 817-820. Furthermore, "where a plaintiff's nonfrivolous claim invokes the exclusive jurisdiction of federal courts, the *Colorado River* stay is not appropriate." *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 500 (7th Cir. 2011) (quoting *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988)).

Evaluating whether abstention is proper under *Colorado* River generally involves a two-part inquiry. *Adkins*, 644 F.3d at 498. First, courts must "determine whether the federal and foreign proceedings are parallel[,] and [i]f the actions are not parallel, the *Colorado River* doctrine does not apply[.]" *AAR*, 250 F.3d 510, 518 (7th Cir. 2001). Second, if the suits are parallel, courts "balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure." *Finova*, 180 F.3d at 898.

Two cases are considered parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora[,]" *Schneider Nat. Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990), and there is a "substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case[,]" *Lumen Const., Inc. v. Brant*

*Const. Co.*, 780 F.2d 691, 695 (7th Cir. 1985). Critically, suits are considered parallel and abstention can be appropriate under *Colorado River* only where the parties' dispute "entails a zero-sum game" where, for example, "conflicting decrees about disposition of the same [*in rem* property] would be untenable." *E. Gate-Logistics Park Chicago, LLC v. CenterPoint Props. Tr.*, 144 F.4th 990, 994 (7th Cir. 2025). "Any doubt regarding the parallel nature of the foreign suit should be resolved in favor of exercising jurisdiction." *AAR*, 250 F.3d at 520.

Here, the Court concludes that the two proceedings are not parallel, so it need not go beyond the first step of the inquiry. Simply put, the Canadian case will not dispose of all claims in this case, and the parties dispute does not "entail a zero-sum game" such that abstention under *Colorado River* would be appropriate. This action involves trade dress and false designation of original claims under the Lanham Act that cannot be resolved by the Canadian court. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 426 (2023) ("In nearly all countries, including the United States, trademark law is territorial—*i.e.*, "a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark." 5 McCarthy § 29:1, at 29-4 to 29-5. Thus, each country is empowered to grant trademark rights and police infringement within its borders."). Regardless, even if there were ultimately "conflicting" judgments in the two cases, they might not be *untenable* because the geographic scope of the claims and types of relief available are different. For these reasons, the Court concludes that the cases are not parallel and abstention under *Colorado River* would not be appropriate.

26

III.     **CONCLUSION**

For the foregoing reasons, Defendants' motion to strike the jury demand is granted but the motions to dismiss for lack of personal jurisdiction and for the Court to abstain in favor of the Canadian proceeding are denied.

**DATED**: June 22, 2026                                          **ENTERED**:

LaShonda A. Hunt
United States District Judge

27